**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3343
_____

JOSEPH SMITH,
                            Appellant

v.

SUSQUEHANNA UNIVERSITY; SCOTT A. MOYER, individually and in his
official capacity as officer of Susquehanna University Department of
Public Safety; CURT BROWN, individually and in his official capacity
as officer of Susquehanna University Department of Public Safety;
THOMAS A. RAMBO, individually and in his official capacity as Assistant
Vice President for Student Life and Director of Public Safety at Susquehanna University

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-14-cv-00116)
District Judge:  Honorable Matthew W. Brann

_____

Submitted under Third Circuit LAR 34.1(a)
on March 24, 2017

Before:  SMITH, Chief Judge, JORDAN and ROTH, Circuit Judges

(Opinion filed: July 13, 2017)

---

OPINION[*]

---

ROTH, <u>Circuit Judge</u>

Joseph Smith appeals the District Court's entry of summary judgment in favor of appellees Scott Moyer, Curt Brown, and Thomas Rambo on Smith's claims for alleged violations of his Fourth Amendment rights. For the reasons set forth below, we will affirm.

## I.[1]

Smith was a student at the private college, Susquehanna University, where he lived in a dormitory building on campus. Pursuant to University policy,[2] dormitory buildings "may be searched and items seized if there is reasonable cause to believe that a student(s) is using his or her room for a purpose in violation of federal, state, or local law or of university regulations." On the evening of January 23, 2012, a resident advisor in Smith's dormitory building called the University's Department of Public Safety and spoke with Public Safety Officer (PSO) Patty McGee to report an odor of marijuana outside Smith's door. McGee sent an email to Brown and Moyer, two other PSOs,

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As Smith's claims were decided at summary judgment, we view all facts in the light most favorable to Smith and make all reasonable inferences in his favor. *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009).

[2] The policy is contained in a student handbook which was given to Smith at the time of his enrollment at Susquehanna.

reporting her observations. Nothing further was done that evening. The next morning, Brown and Moyer approached Rambo, the Director of the Department of Public Safety, with McGee's report. Rambo determined that McGee's observations were sufficient to establish reasonable cause,[3] and authorized a search of Smith's room. Brown and Moyer proceeded to Smith's room and announced their presence, but Smith did not consent to a search of the room.

What happened next is disputed. Smith testified that Brown and Moyer "pushed the door open" and "forced [their] way into the room." According to Smith, Brown said he was a cop. Smith also stated that both PSOs wore clothing that looked very much like a police uniform. Smith acknowledged, however, that "it said Susquehanna University on the uniform" and that neither PSO had a gun, handcuffs, or a baton. Brown and Moyer denied forcing their way into the room, and denied that either of them stated that they were police officers. Smith then called his father, who remained on the line for the remainder of the encounter.[4] Smith told his father that two "security people" had "[p]ushed into his room," after which his father requested to be put on speaker phone. At this point, Smith told his father that he was speaking to two security people.

The PSOs proceeded to search Smith's room for fifteen minutes while Smith was present. Smith and his father both testified that the officers found nothing during this

---

[3] The parties do not dispute that any use of marijuana violates "federal, state, or local law or [] university regulations" for purposes of the administrative search provision of the university policy.

[4] Smith testified that he only called his father after Brown and Moyer began searching his room. Brown and Moyer, on the other hand, testified that Smith called his father before they began the search.

period.  Then Smith was allowed to leave.  According to the PSOs the search continued after Smith left, lasting for approximately an hour.  Brown testified that their search recovered marijuana, hallucinogenic mushrooms, crack cocaine, and various drug paraphernalia.  Smith has denied possessing or using any drugs in his room.  The PSOs documented and confiscated the contraband drugs, removing them to a secure area on campus and notifying the local police department.  Police officers then took custody of the drugs and commenced drug possession charges against Smith.  Smith does not suggest that the police themselves took part in the search of his room, or were otherwise involved before being contacted by Brown and Moyer.

Smith was prosecuted for the drug offenses in the Court of Common Pleas for Snyder County.  During the course of his criminal prosecution, Smith moved to suppress the evidence recovered from his room as violative of the Fourth Amendment.  After hearing testimony from Smith, his father, and the PSOs, the judge made the following findings:

> Based on the testimony presented, the Court does not find that state action was involved in the search of Mr. Smith's room . . ..
>
> The Court further finds that the search was conducted in accord with the Susquehanna University policy . . ..
>
> The Court finds that the search conducted by DPS officers was based on reasonable belief that there were – the room was being used in violation of the law.[5]

Thereafter, Smith entered a plea of nolo contendere to possession of a controlled substance and was sentenced to time served.

---

[5] JA 227.

Smith brought suit under against Susquehanna University,[6] Brown, Moyer, and Rambo, alleging that the search of his room violated the Fourth Amendment's proscription on unreasonable searches and seizure and its state law analog. He sought damages pursuant to 42 U.S.C. § 1983 and injunctive and declaratory relief pursuant to Pennsylvania state law. Following discovery, the District Court adopted a magistrate judge's report and recommendation, granted summary judgment to the defendants on Smith's Fourth Amendment claims, and closed the case.

## II.[7]

Smith appeals the entry of summary judgment on his claims against the three defendants, arguing that the District Court failed to appropriately consider his testimony and that of his father in finding that Brown, Moyer, and Rambo were not state actors and that the search was conducted in accordance with the University's policy. We exercise plenary review of a district court's grant of summary judgment,[8] and may affirm on any basis that is supported by the record.[9]

Our obligation to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"[10] precludes Smith from relitigating the question of whether Brown, Moyer, and

---

[6] All claims against Susquehanna University were dismissed for insufficient allegations as to the existence of a formal policy or custom.

[7] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and we have jurisdiction over Smith's appeal pursuant to 28 U.S.C. § 1291.

[8] *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013).

[9] *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011).

[10] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, rulings on federal constitutional questions in state proceedings may continue to have preclusive

Rambo were state actors.   Under Pennsylvania law, "when an issue of fact or of law is actually litigated and determined by a valid final judgment, and determination of the issue was essential to judgment, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim."[11]  Smith does not contest that the question of state action was actually litigated or was essential to the denial of his suppression motion; rather, he argues only that the suppression ruling followed by his plea of nolo contendere was not a "valid final judgment."

Pennsylvania courts have squarely held that collateral estoppel can block civil actions "once a criminal defendant has been *convicted* and sentenced . . .."[12]  In Pennsylvania, therefore, a trial court's interlocutory orders become final, and entitled to preclusive effect, upon a defendant's conviction, even if there is no admission or finding of guilt.[13]  Thus, while Smith correctly notes that a nolo plea is not an admission of guilt, we have held that such pleas are indisputably "tantamount to a conviction," and may be relied upon where the "fact of conviction, not the plea, . . . [is] the operative fact . . .."[14]  Here, therefore, acceptance of Smith's nolo plea and his subsequent conviction rendered

---

effect in federal civil rights litigation.  *See San Remo Hotel, L.P. v. City and Cty. of San Francisco, California*, 545 U.S. 323, 343-44 (2005).

[11] *McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147-48 (Pa. 1996) (citation omitted).

[12] *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996) (emphasis added).

[13] *See Lapcevich v. Erie Ins. Exchange*, 3 Pa. D. & C.4th 115, 120 (Pa. Ct. Comm. Pl. 1988) ("In civil rights actions the decision of the trial court on a suppression motion followed by a conviction is the final judgment which by collateral estoppel prevents recovery in a civil suit for damages.") (citations omitted).

[14] *United States v. Poellnitz*, 372 F.3d 562, 569 (3d Cir. 2004) (internal quotation marks and citation omitted).

the denial of the suppression motion a final judgment entitled to preclusive effect.[15] Accordingly, we must give conclusive effect to the Court of Common Pleas' determination that Brown, Moyer, and Rambo were not state actors in conducting the search of Smith's room. As claims pursuant to 42 U.S.C. § 1983 may only lie against state actors,[16] this determination mandates judgment in favor of the appellees on all of Smith's federal constitutional claims.[17]

III.

For the foregoing reasons, we hold that Smith is precluded from relitigating the question of whether Brown, Moyer, and Rambo were state actors in conducting a search of his dormitory room. Accordingly, we will affirm the District Court's grant of summary judgment.

---

[15] The record makes abundantly clear that the Court of Common Pleas believed the suppression motion turned entirely on whether Brown and Moyer were state actors. *See* JA. 227 ("The suppression issue rises or falls on whether what took place on January 24th, 2012 constitutes state action."). Thus, the Court of Common Pleas' resolution of the state action question was essential to its denial of the suppression motion.

[16] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) ("Thus, a plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right *by a state actor*.") (emphasis added).

[17] As such, we need not address any of Smith's other contentions.